UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:19-cv-60409-MGC

DISPOSITIVE MOTION

RYAN TURIZO,
individually and on behalf of all
others similarly situated,

Plaintiff,

v.

ADVANCED DENTAL WELLNESS
CENTER, P.A.

Defendant.
_____/

## DEFENDANT ADVANCED DENTAL WELLNESS CENTER, P.A.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

COME NOW, the Defendant, ADVANCED DENTAL WELLNESS CENTER, P.A (ADW), by and through the undersigned counsel,  pursuant to Rule 12(b)(1) and (6), Federal Rules of Civil Procedure, files this Motion to Dismiss Plaintiff, RYAN TURIZO's FIRST AMENDED CLASS ACTION COMPLAINT for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted and in support thereof states as follows:

## LEGAL STANDARD IN EVALUATING A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) and (6)

Dismissal of an action under Rule 12(b)(1) is warranted whenever a district court "lacks the statutory or constitutional power to adjudicate it, such as when ... the plaintiff lacks constitutional standing to bring the action." Cortlandt St. Recovery Corp. v. Hellas Telecomms.,

0:19-cv-60409-MGC

S.À.R.L., 790 F.3d 411, 417 (2d. Cir. 2015), (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A plaintiff bears the burden of establishing its standing by a preponderance of the evidence. See Makarova, 201 F.3d at 113. "In assessing the plaintiff's assertion of standing, [courts] accept as true all material allegations of the complaint[ ] and ... construe the complaint in favor of the complaining party." Cortlandt St. Recovery, 790 F.3d at 417, (quoting W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008)). But courts may also consider evidence outside of the pleadings in assessing a Rule 12(b)(1) motion. Cortlandt St. Recovery, 790 F.3d at 417; Makarova, 201 F.3d at 113.

"The policy of the Judicial Code, 28 U.S.C.A. § 1331 et seq., concerning jurisdiction by diversity of citizenship calls for strict construction of the statute and if the plaintiff's allegations of jurisdiction are challenged, the plaintiff must support them by competent proof or suffer his action to be dismissed for lack of jurisdiction." Cont'l Min. & Mill. Co. v. Migliaccio, 16 F.R.D. 217, 219 (D. Utah 1954), quoting Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations which are enough to raise a right to relief above the speculative level. Bell Atlantic Corn. V. Twombly, 550 U.S. 544, 555 (2007). Although it is not necessary for the complaint to contain detailed factual allegations, the plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. See Id. On a motion to dismiss, Courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. The facts must be sufficient to push the claims from the realm of "conceivable to plausible." Andrade v. Miami Dade County, 2011 WL 4345665 *2 (S.D. Fla. 201l) (quoting Twombly, 550 U.S. at 570). While Courts may make reasonable inferences in a plaintiff's favor, they are not required to draw plaintiff's

0:19-cv-60409-MGC

inference. <u>Sinaltrainal v. Coca-Cola</u>, 578 F. 3d 1252, 1260 (11th Cir. 2009). While factual allegations in a complaint are to be credited as true for purposes of Rule 12(b)(6) motions, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## **RELEVANT ALLEGATIONS AND BACKGROUND**

In his First Amended Complaint, the Plaintiff alleges that Defendant who operates a dental practice in Broward County, upon Plaintiff's information and belief, sent at least 1,000 thousand illegal text messages over the last four years preceding this lawsuit. As an example of one of these unsolicited text messages, the Plaintiff provided the following image of a text message he received from ADW on December 20, 2018:

0:19-cv-60409-MGC





 (DE 1., ¶ 33).

The Plaintiff also alleges that ADW's text messages constitute telemarketing because they encourage the future purchase of ADW's products and/or services by consumers and that at no point in time did Plaintiff provide ADW with his express written consent to be contacted by text for marketing purposes. (DE 1., ¶ 36).

The Plaintiff, in his Class Allegations, defines a Class as:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, received a marketing or promotional text message made through the use of any automatic telephone dialing system, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, not for emergency purpose and without the recipient's prior express written consent.**

0:19-cv-60409-MGC

(DE 1., ¶ 43).

The Plaintiff further alleged that ADW used the third party's automatic telephone dialing system or "ATDS" (equipment which has the capacity to dial without human intervention) to send out mass automated text advertising messages. (DE 1., ¶¶ 12, 32, 39, 47).

## ARGUMENT AND MEMORANDUM OF LAW

### 1. THIS COURT LACKS SUBJECT MATTER JURISDICTION AS PLAINTIFF LACKS ARTICLE III STANDING.

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). With regard to the first element, "[t]o establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 1548. "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff *automatically satisfies the injury-in-fact requirement* whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 1549. (Emphasis added.)

The Plaintiff alleges the following damages caused by ADW "unsolicited text messages":

> Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

(DE 1., ¶ 41)

The Plaintiff makes bare-bones, conclusory allegations of very specific "actual harm" such as 1) invasion of his privacy, 2) aggravation, 3) annoyance, 4) intrusion on seclusion, 5)

0:19-cv-60409-MGC

trespass, and 5) conversion without providing any basic facts about how his privacy was invaded, how or what was aggravated, how he was annoyed, the level of seclusion before and during receiving the unsolicited text messages, what or who was trespassed upon and converted. The Plaintiff also fails to give at least a rudimentary description of his daily life and how exactly a single message he relies on disrupted it. In short, the Plaintiff failed to plea a concrete injury to establish Article III standing. See Spokeo, Inc. at 1549. But see Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1250 (11th Cir. 2015) ("For Plaintiff, *the specific injury* targeted by the TCPA is the sending of the fax and resulting occupation of the recipient's telephone line and fax machine, not that the fax was actually printed or read.) (Emphasis added.)

Accordingly, the Plaintiff's action shall be dismissed for lack of subject matter jurisdiction for failure to plea a concrete injury to establish Article III standing.

## 2. THIS COURT MAY LACK SUBJECT MATTER JURISDICTION AS THE ISSUE OF WHETHER THE TCPA BARS CLASS ACTIONS IS AN UNRESOLVED QUESTION OF FLORIDA LAW.

TCPA allows for private right of action "if otherwise permitted by the laws or rules of court of a State." 47 U.S.C.A. § 227(3). "The TCPA does not give rise to federal question jurisdiction, jurisdiction over this action is, and must be, alleged pursuant to diversity jurisdiction under 28 U.S.C. § 1332." Holster v. Gatco, Inc., 485 F. Supp. 2d 179, 183 (E.D.N.Y. 2007), aff'd, 618 F.3d 214 (2d Cir. 2010).[1]

"In order to meet the amount in controversy requirement of 28 U.S.C. § 1332(a), however, individuals attempting to pursue a private right of action in federal court are often

---

[1] Plaintiff's Civil Cover Sheet wrongly indicates "Federal Question" as basis for jurisdiction, whereas the proper jurisdictional basis is "Diversity", more specifically 28 U.S.C.A. § 1332(d)(2) and (d)(2)(A).

0:19-cv-60409-MGC

forced to do so as a class pursuant to Federal Rule of Civil Procedure 23 because one individual

is unable to satisfy the amount in controversy requirement." <u>Holster</u> at 182. "In order to meet the

amount-in-controversy requirement, a single plaintiff would have to receive either 150 faxes

from a single defendant, assuming $500 in statutory damages per fax, or 50 faxes from that

defendant, assuming treble damages." <u>Gottlieb v. Carnival Corp.</u>, 436 F.3d 335, 343, n. 10 (2d

Cir. 2006). The Plaintiff here is not alleging that he can singe-handedly meet the amount-in-

controversy requirement of 28 U.S.C. § 1332(a).

The Plaintiff is proceeding as a part of a Class Action alleging jurisdiction under Class

Action Fairness Act (CAFA), 28 U.S.C.A. § 1332(d). "CAFA [enacted in 2005] provides federal

courts with jurisdiction over class actions provided that: the number of plaintiffs in all proposed

plaintiff classes exceeds one hundred, § 1332(d)(5)(b); any member of the plaintiff class is

diverse from any defendant, § 1332(d)(2); and the aggregate of the claims of individual class

members exceeds $5,000,000, exclusive of interests and costs. § 1332(d)(2), (6)." <u>Lowery v.</u>

<u>Alabama Power Co.</u>, 483 F.3d 1184, 1194 (11th Cir. 2007)

The question whether the TCPA bars class actions is an unresolved question of Florida

law. In <u>Guy's World, Inc. v. Condon</u>, 1 So. 3d 240, 241 (Fla. 2nd DCA 2008), the Court affirmed

a trial court's a nonfinal order granting plaintiff's motion for class certification under 47 U.S.C. §

227 while stating that "[t]he legal question of whether the TCPA bars class actions calls for an

answer. But, providing a useful analysis of the question requires that the issue be framed

properly for our review. On the record before us, we cannot determine if this issue was raised in

the pleadings or if the trial court had the opportunity to address the issue." <u>Id.</u> at 24. <u>See</u> <u>also</u>

<u>Local Baking Prod., Inc. v. Kosher Bagel Munch, Inc.</u>, 23 A.3d 469, 474 (App. Div. 2011)

0:19-cv-60409-MGC

("Guy's World, Inc. v. Condon […] affirming certification due to the limited record, but noting that the legal question of whether the TCPA bars class actions calls for an answer.")

If Florida law or rules do not permit class actions under TCPA, then this Court does not have subject matter jurisdiction over this action. "*It is well-established doubts regarding subject matter jurisdiction must be resolved before taking any steps to address the merits of a case.* Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." OOO-RM Invest v. Net Element Int'l, Inc., No. 14-20903-CIV, 2014 WL 12613282, at *1 (S.D. Fla. 2014), quoting Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1275 n.22 (11th Cir. 2000) and Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

Furthermore, "[w]here, as here, a diversity case raises an unresolved question of state law, a federal court should not stretch to retain jurisdiction. Levitt & Sons, Inc. v. Swirnow, 58 F.R.D. 524, 531 (D. Md. 1973). (Emphasis added). In United Mine Workers v. Gibbs, 383 U.S. 715 (1966) the United States Supreme Court cautioned against deciding unresolved state law issues under the federal court's pendent jurisdiction: "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." Id. at 726.

Assuming, *arguendo*, that a question of whether Florida law or rules allows class action under TCPA is the one of procedure and not the substantive law, this Court will not be able to

0:19-cv-60409-MGC

proceed under the Erie Doctrine [2] since 47 U.S.C.A. § 227(3) specifically refers to both, "laws or rules of court of a State." The word "rule" should be given an ordinary meaning as in Florida Rules of Civil Procedure or Florida Rules of Appellate Procedure.

Accordingly, the Plaintiff's action shall be dismissed for lack of subject matter jurisdiction and, as an alternative ground, this Court should exercise discretion and not retain jurisdiction to decide an unresolved question of state law. [3]

### 3.  THIS COURT LACKS SUBJECT MATTER JURISDICTION AS AN ACTION SEEKING RECOVERY FOR ALLEGEDLY UNSOLICITED TEXT MESSAGES FROM A DENTAL PRACTICE ADVERTISING DENTAL SERVICES IS NOT "OTHERWISE PERMITTED BY THE LAWS OR RULES OF COURT OF [FLORIDA]."

§ 466.019(1), Fla. Stat. provides the following:

> The purpose of this section is to ensure that the public has access to information which provides a sufficient basis upon which to make an informed selection of dentists while also ensuring that the public is protected from false or misleading advertisements which would detract from a fair and rational selection process. *The board shall adopt rules to carry out the intent of this section, the purpose of which shall be to regulate the manner of such advertising in keeping with the provisions hereof.*

---

[2] "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996)

[3] Dewar v. Dough Boy Pizza, Inc., 184 So. 3d 1169, 1171 (Fla. 2nd DCA 2015), a Florida TCPA class action case, addressed the issue of whether an entity whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held liable directly under the TCPA's ban on the sending of junk faxes and did not address the question of whether the TCPA bars class actions.

0:19-cv-60409-MGC

The statute shows that medical care providers in general, and dentists and dental practices specifically, are given special treatment where the Florida legislature, understating that advertising of dental services is not on equal footing with "autodialed and prerecorded calls" which cause "the nuisance, invasion of privacy, cost, and inconvenience" to the consumers the Congress had in mind when it enacted TCPA, Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 797 (W.D. Pa. 2016), quoting In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. at 7979–80, treats them as an educational tool which provides the public in general, and not just people who gave express consent, with access to information it needs to be able make an informed selection of dentists. [4]

An action under TCPA or a similar Florida statute such as Florida Telemarketing Act, §§ 501.601 et seq., seeking recovery for allegedly unsolicited text messages from a dental practice advertising dental services, the allegations the Plaintiff made in his Complaint, is not "otherwise permitted by the laws or rules of court of [Florida]." Any deficiency in a dentist's advertisement is cognizable under the rules adopted by a Dental Board designed to regulate the manner of such advertising and not by TCPA. [5] [6]

---

[4] The undersigned is mindful that the defendant in Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A is a dental practice. However, the issue of whether an action seeking recovery for receiving text messages advertising dental services from a dental practice is permitted by Florida laws or rules of court in light of § 466.019(1), Fla. Stat. was not brought up in that case.

[5] Fla. Admin. Code Ann. r. 64B5-4.002(1) "*As used in the rules of the Board, the terms "advertisement" and "advertising" shall mean any statements, oral or written, disseminated to or before the public or any portion thereof with the intent of furthering the purpose, either directly or indirectly, of selling professional services, or offering to perform professional services, or inducing members of the public to enter into any obligation relating to such professional services.* The provisions of this rule shall apply to media exposure of any nature regardless of whether it is in the form of paid advertising." (Emphasis added.)

0:19-cv-60409-MGC

It is the Florida Legislature and the Board of Dentistry, not the United States Congress, that regulates the advertisement by dentists in Florida. And since neither § 466.019(1), Fla. Stat. nor Fla. Admin. Code Ann. r. 64B5-4.002(1) make any reference to TCPA, there is no reason to think that in enacting § 466.019 or in promulgating 64B5-4.002(1), the Florida Legislature or the Board of Dentistry intended the prohibitions contained in TCPA to become a part of advertisement generated by dentists or dental practices. TCPA does not preempt § 466.019(1), Fla. Stat. or Fla. Admin. Code Ann. r. 64B5-4.002(1). <u>See</u> 47 U.S.C.A. § 227(f)(1).

Accordingly, the Plaintiff's action shall be dismissed since this Court lacks subject matter jurisdiction as an action seeking recovery for allegedly unsolicited text messages from a dental practice advertising dental services is not permitted by the laws or rules of court of Florida

### 4.  THE PLAINTIFF FAILED TO STATE A CAUSE OF ACTION UNDER TCPA, 47 U.S.C.§227(b)(1)(A) BECAUSE HE GAVE URBAN DENTISTRY, ADW'S PREDECESSOR IN INTEREST HIS CELLULAR TELEPHONE NUMBER.

**A. Express Consent is a Complete Defense to a 47 U.S.C. § 227(b)(1)(A) Claim.**

47 U.S.C. § 227(b)(1)(A) prohibits the use of a device capable of generating "random" or "sequential" numbers without the "express consent" of the called party.

It provides, in relevant part:

---

[6] § 466.004(1), Fla. Stat. "*To carry out the provisions of this chapter, there is created within the department the Board of Dentistry consisting of 11 members who shall be appointed by the Governor* and subject to confirmation by the Senate. Seven members of the board must be licensed dentists actively engaged in the clinical practice of dentistry in this state; two members must be licensed dental hygienists actively engaged in the practice of dental hygiene in this state; and the remaining two members must be laypersons who are not, and have never been, dentists, dental hygienists, or members of any closely related profession or occupation." (Emphasis added.)

0:19-cv-60409-MGC

> It shall be unlawful for any person within the United States . . . to initiate telephone calls (A) to make any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system…
>
> (iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1) (emphasis added).

While this TCPA provision—enacted in 1991 before the advent of text message technology—speaks only to telephone calls, it has been interpreted to apply to text messages. See, e.g., Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952-53 (9th Cir. 2009); Buslepp v. Improv Miami, Inc., No. 12-60171, 2012 WL 4932692, *2 (S.D. Fla. Oct. 16, 2012); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 F.C.C.R. 14014, 14115 (2003). There is no liability under this statute, however, if the plaintiff gave his "express consent" and that consent was not withdrawn.

Although the existence of express consent is an affirmative defense, it should be considered at the motion to dismiss stage in a TCPA case since "[a]n affirmative defense . . . may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action." [7] See, e.g., Scott v. Merchs. Ass'n Collection Div., Inc., No. 12–23018, 2012 WL 4896175, *2 (S.D. Fla. Oct. 15, 2012) (observing that "[w]hether these text messages were sent to Plaintiff with his prior express

---

[7] If the Court finds this ground of ADW's Motion to Dismiss premature on this stage of litigation, the information and law contained here may serve as a vehicle to aid the Opposing Counsel to perhaps re-evaluate his factual contentions and class definition thereby saving the Court's time and the parties' recourses in litigating this matter.

0:19-cv-60409-MGC

consent is an affirmative defense" and that "[a]n affirmative defense . . . may be considered in resolving a motion to dismiss when the complaint affirmatively and clearly shows the conclusive applicability of the defense to bar the action"); see also Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1274-75 (11th Cir. 2004).

Here, although the Complaint is conspicuously and incredibly silent regarding this issue, the Plaintiff was a patient of a dental practice named, Urban Dentistry (Urban) operated by Nadja A. Horst, D.M.D. and Nadja A. Horst, D.M.D., P.A..

On or about November 24, 2015, the Plaintiff, Mr. Turizo became Urban's patient. On or around that date, the Plaintiff executed, among other things, *Acknowledgment of Receipt of Notice of Privacy Practice*, (Ex. A at 1) and an untitled document where the Plaintiff gave his phone number and his email address to Urban (Ex. A at 2).[8]  On or about February 21, 2017, ADW purchased Urban from Nadja A. Horst, D.M.D. and Nadja A. Horst, D.M.D., P.A.. (Ex. C).[9] According to the terms of Agreement for the Purchase and Sale of Assets of a Professional Practice (Agreement), ADW purchased from Urban, among other things, the following:

> 1. SALE OF ASSETS: Upon the terms and subject to the conditions herein . . . [Nadja Horst, D.M.D. and Nadja A. Horst, D.M.D., P.A] agree to sell, and [ADW] agrees to purchase all of the assets ("Assets") […] used by or in connection with the Practice . . .:

---

[8] Plaintiff's telephone number, email address and the name of the person who referred him to Urban are redacted from Ex. 1 to preserve his privacy. The unredacted copy of Ex. 1 was emailed to the opposing counsel to jibrael@jibraellaw.com contemporaneously with the filing of this Motion.

[9] Ex. C is redacted for financial information and omits various exhibits as those are irrelevant to this Action.

0:19-cv-60409-MGC

   A. Sale of Assets by Seller: Seller, and to the extent any Assets are owned by Dr., Horst, shall sell all of their right, title and interest in and to all of the Assets owned and/or used by Seller in the operation of the Practice including without limitation the following Assets:

   (i) all files pertaining to the operation of the Practice prior to the Closing Date (including, without limitation,  . . . patients' financial and insurance records and other information (in all forms and media) for all patients of the Practice [.]

   …

   (x) All rights title and interest to the registered fictitious name, "Urban Dentistry".

   . . .

   B. Sale of Personal Goodwill by Dr. Horst, Restrictive Covenants:
   (i) The Parties agree and acknowledge that Dr. Horst is selling her goodwill ("Personal Goodwill") of the Practice which is based on the relationship between Dr. Horst and the patients of the Practice, and this is a personal, non-corporate asset that is conveyed individually by Dr. Horst through this Asset Purchase Agreement [.]

   . . .

   20. PATIENTS:

   20.1. RECORDS: Purchaser, and Seller agree to comply with any applicable regulations relating to the transferability and confidentiality of the clinical and financial content of the Patient Records. Purchaser agrees to retain the Patient Records in a safe place and manner from the Date of Possession until one (1) year beyond the expiration of all applicable statutes of limitations for liability claims.

§ 456.057(1), Fla. Stat., in its relevant part, states the following: As used in this section, the term "records owner" means […] any health care practitioner to whom records are transferred by a previous records owner [.] § 466.018(5), Fla. Stat. mandates that "[a]ll patient records kept in

0:19-cv-60409-MGC

accordance with this section shall be maintained for a period of 4 years from the date of the patient's last appointment."

As explained in the following sections, Plaintiff's act of giving Urban his telephone number constituted "express consent" to receive text messages unless and until that consent was withdrawn. That consent, by virtue of the Agreement between Urban and ADW and operation of §§ 456.057(1) and 466.018(5), Fla. Stat. was transferred, along with the Plaintiff's entire file [10], to ADW.

There is no allegation that Plaintiff withdrew his consent or did anything at all to suggest he did not wish to receive messages from ADW, so the Complaint fails to state a 47 U.S.C. § 227(b)(1)(A) claim.

## B. The FCC Has Definitively Determined That Providing a Telephone Number Constitutes "Express Consent" Under 47 U.S.C. § 227(b)(1)(A).

The TCPA does not define "express consent." The legislative history makes it clear that this lack of definition was deliberate and that Congress did not intend to require formal, written consent. H.R. Rep. 102-317, at 13 (1991) ("The Committee did not attempt to define precisely the form in which express permission or invitation must be given, but did not see a compelling need for such consent to be in written form.") 47 U.S.C. § 227(b)(2); see also Charvat v. EchoStar Satellite, LLC, 630 F.3d 459, 466-67 (6th Cir. 2010) ("Congress vested the FCC with considerable authority to implement the TCPA."). Instead, Congress delegated to the FCC the

---

[10] Under § 456.057(1), Fla. Stat. and Agreement, Dr. Boris Lipovetskiy, ADW's health care practitioner, became the owner of the Plaintiff's patient file on February 21, 2017, which ADW is obligated to maintain for 4 years from the date of the Plaintiff's last appointment under § 466.018(5) plus an extra year under Clause 20.1. of the Agreement. Assuming, *arguendo*, that the Plaintiff's last appointment was on November 24, 2015, AWD is obligated to maintain the Plaintiff's file until November 24, 2020.

0:19-cv-60409-MGC

authority to "prescribe regulations to implement the requirements" of the TCPA.[11] Thus, the

meaning of the term "express consent" is to be found in the FCC's orders.

In its initial rulemaking following the passage of the TCPA, the FCC noted that, for

purposes of 47 U.S.C. § 227(b)(1)(A):

> [A]ny telephone subscriber who releases his or her telephone number
> has, in effect, given prior express consent to be called by the entity to
> which the number was released . . . *Persons who knowingly release*
> *their phone numbers have in effect given their invitation or permission*
> *to be called at the number which they have given, absent instructions to*
> *the contrary.*[12] Hence, telemarketers will not violate our rules by calling
> a number which was provided as one at which the called party wishes
> to be reached.

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,

Report and Order, 7 F.C.C.R. 8752, 8769 (1992) ("Initial FCC Rulemaking") (emphasis added);

see also Osorio v. State Farm Bank, F.S.B., 859 F. Supp. 2d 1326, 1329 (S.D. Fla. 2012)

(observing same).

In 2007, the FCC repeated this declaration in the context of a petition brought by the

Association of Credit and Collection Professionals ("ACCP"). In re Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling, 23 F.C.C.R.

559, 564 (2007) ("FCC Declaratory Ruling") (stating that, in 1992, "the Commission determined

that 'persons who knowingly release their phone numbers have in effect given their invitation or

---

[11]  In fact, the Complaint acknowledges that The Federal Communications Commission ("FCC")
is empowered to issue rules and regulations implementing the TCPA. (DE 1 ¶ 15).

[12]  The Complaint contains no allegation that Plaintiff gave instructions that he did not wish to be
called. Instead, Plaintiff was clearly given the opportunity to reply "STOP" to prevent future text
messages, but makes no allegation that he did so. (DE 1 ¶ 33).

0:19-cv-60409-MGC

permission to be called at the number which they have given, absent instructions to the contrary.'").

This FCC Declaratory Ruling applied the broad rule articulated in the Initial FCC Rulemaking to the specific question presented by the ACCP, namely whether creditors had "express consent" to call cellular telephone numbers of debtors who had provided those numbers to them. FCC Declaratory Ruling at 563. The FCC concluded:

> *[A]utodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible.* We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

FCC Declaratory Ruling at 568. (Emphasis added.)

Notably, while the FCC Declaratory Ruling only addressed the specific question presented by the ACCP, the FCC did not state that this ruling should apply only to creditors and, more importantly, did not in any way curtail the broader Initial FCC Rulemaking. Kenny v. Mercantile Adjustment Bureau, No. 10-cv- 010, 2013 WL 1855782, *6 (W.D.N.Y. May 1, 2013) ("There is no basis . . . for drawing an inference that the FCC intended [in the FCC Declaratory Ruling] to limit the application of the prior express consent exemption to parties with a consumer-creditor relationship. Such a conclusion would run afoul of the plain language of the TCPA which exempts any call to a cellular telephone service 'made with the prior express consent *of the called party*.'") Instead, the FCC Declaratory Ruling expressly reaffirmed the general rule that providing a telephone number constitutes "express consent" for purposes of 47 U.S.C. § 227(b)(1) and clarified that this general rule applies to calls made to mobile phones. Id.

0:19-cv-60409-MGC

The FCC's interpretation of "express consent" is essential to the application of 47 U.S.C. § 227(b)(1). In passing this portion of the TCPA, Congress sought to prevent the use of "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added) (defining "automatic telephone dialing system," as the term is used in 47 U.S.C. § 227(b)(1)). It makes perfect sense, therefore, that the FCC interpreted "express consent" to include the act of giving a telephone number. A caller cannot be said to have violated a statute that outlaws "random" or "sequential" dialing when calling a telephone number that was provided to the caller by the called party.

As explained above, the FCC has broadly construed "express consent" to include the act of providing a telephone number. This interpretation is in keeping with the intent of a statute that prohibits the dialing of random or sequential numbers. It also serves the essential function of limiting the application of a statute that would otherwise prohibit many ordinary calls from smart phones.

0:19-cv-60409-MGC

The Eleventh Circuit in <u>Murphy v. DCI Biologicals Orlando, LLC</u>, 797 F.3d 1302, 1305 (11th Cir. 2015) [13], have agreed with the FCC interpretation of "express consent" of 47 U.S.C. § 227(b)(1)(A) and affirmed the district court's [14] application of "express consent" rule in dismissing the plaintiff's TCPA claim. "Having determined that the district court correctly refused to entertain arguments regarding the validity of the 1992 FCC Order [7 FCC Rcd. 8752, 8769 (1992)], we turn to whether DCI's actions violated the TCPA under any FCC order. Mr. Murphy's argument that prior express consent must be given its plain language meaning fails

---

[13] The facts in <u>Murphy</u> strongly resemble Plaintiff's allegations: "DCI buys and resells blood products through plasma collection centers across the United States. Mr. Murphy was paid for multiple blood plasma donations he made at a collection center during the spring of 2010. Before donating, Mr. Murphy filled out medical release and acknowledgement forms, as well as a "New Donor Information Sheet," which asked for information required by federal law and for personal information such as his telephone number. Mr. Murphy alleged that DCI, through public ads and privacy policies, represented that blood donor information submitted for record maintenance would be kept confidential. More than two years later, DCI sent Mr. Murphy two text messages. The first read: **You will receive MMS messages from DCI Biologicals on short code 76000. Reply STOP to 99000 to cancel.** Mr. Murphy did not reply. Approximately 40 minutes later, Mr. Murphy received a second text message: **We NEED U Back $20 Special!!! DCI Biologicals: DONATE TODAY! GET PAID TODAY! SAVE A LIFE TODAY! "$20 COME BACK SPECIAL"-Come back in and See Us & Get an Extra $5 on your NEXT 4 Donations! DONATE UP TO 20 MIN FASTER WITH OUR NEWLY UPGRADED MACHINES....** The second text message also had an electronic media file attached, which pictured a woman holding cash with the words: DCI Biologicals PLASMA The Fluid of LIFE EARN UP TO $235 A MONTH. Mr. *Murphy alleged that DCI stored donor record information on a commercial database it operated and that it provided the donor information to third party text message marketing/advertising platforms. Mr. Murphy further alleged that DCI used the third parties' automatic dialing equipment to send out mass automated text advertising messages to donors such as himself*." <u>Murphy v. DCI Biologicals Orlando, LLC</u>, 797 F.3d 1302, 1304 (11th Cir. 2015) (Emphasis added.)

[14] "The district court rightly refused to consider Mr. Murphy's argument that the 1992 FCC Order's interpretation was inapplicable and contrary to the plain language of the TCPA because the effect would be to "set aside, annul, or suspend" the FCC Order and thus a violation of the Hobbs Act." <u>Murphy v. DCI Biologicals Orlando, LLC</u>, 797 F.3d 1302, 1307 (11th Cir. 2015)

0:19-cv-60409-MGC

because it requires rejection of the FCC's interpretation of prior express consent in FCC orders. Absent a direct appeal to review the 1992 FCC Order's interpretation of prior express consent, we are bound to follow it." Id. at 1307–08. In ruling that "[b]y voluntarily providing his cell phone number to DCI, Mr. Murphy gave his prior express consent to be contacted", Id. at 1308, the Murphy Court was not concerned that the call was or might have been generated by an ATDS system.

For these reasons, the First Amended Complaint fails to state a claim under 47 U.S.C. § 227(b)(1)(A) and should be dismissed.

5. **THE CLASS ALLEGATIONS SIMPLY RECITE RULE 23 AND THUS VIOLATE FEDERAL RULE OF CIVIL PROCEDURE 8. FURTHERMORE, VIOLATION OF FEDERAL RULE OF CIVIL PROCEDURE 8 AS TO DIVERSITY AND THE AMOUNT OF DAMAGES REQUIRED BY CLASS ACTION FAIRNESS ACT (CAFA), 28 U.S.C.A. § 1332(d)(2) AND (d)(2)(A) DEPRIVES THE COURT OF SUBJECT MATTER JURISDICTION.**

Under Rule 8(a)(2), a pleading that states a claim for relief must contain a "short and plain statement of claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

While Plaintiff claims that it his "Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district", (DE 1., ¶ 35); that the "aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA")"; "Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant." (DE 1., ¶ 7); and "Upon information and belief, Defendant has sent at least 1,000 thousand illegal text messages over the last four years preceding this lawsuit." (DE 1., ¶ 32).

0:19-cv-60409-MGC

Plaintiff does not allege how it came by this belief, or who or what informed it; or how his class action can come within the jurisdictional dollar amount; or which class member resides in a different from AWD state. These allegations appear to be nothing more than rank speculation on the part of Plaintiff, and certainly do not offer sufficient facts from which the Court could plausibly conclude it to be true. For example, the First Amended Complaint fails to say how many such text messages were sent [15], to what locations or numbers or to whom they were addressed. Plaintiff fails to identify any text messages, received by any other person, other than the one the Plaintiff received.

Pursuant to <u>Twombly</u>, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 557. This Court need not accept legal conclusions as true. <u>Iqbal</u>, 556 U.S. at 678. Thus, Plaintiff's formulaic allegations that ADW violated the TCPA and that this case is appropriate for class treatment are merely conclusory and unsupported by any allegations of specific fact. Therefore, the First Amended Complaint must be dismissed.

In <u>Daisy, Inc. v. Pollo Operations, Inc</u>., No. 2:14-cv-564-FtM- 38CM, 2015 WL 1418607 (M.D. Fla. March 27, 2015), the plaintiff brought a claim alleging a violation of the TCPA. <u>See</u> <u>Id</u>. at *1. The Daisy complaint alleged only three separate faxes and, like this case, asserted a putative class action claim. <u>See Id</u>. at *5. Defendant Pollo Operations, Inc. ("Pollo") argued that the complaint failed to comply with Federal Rule of Civil Procedure 8 because it merely recited

---

[15] "Defendant embarked on an illegal marketing campaign by sending marketing *text messages to hundreds, if not thousands*, of consumers at a time and provided various types of offers, savings and promotions pertaining to dental services", (DE 1., ¶ 32), (emphasis added), is nothing more than a mere conjecture entirely devoid of even basic facts from which the Court could plausibly conclude it to be true.

0:19-cv-60409-MGC

the elements of a class action under Rule 23 and was devoid of any factual basis that would support an inference of years of unauthorized faxes sent to the putative class members. See Id. The following allegations at issue in Daisy are very similar to allegations that Plaintiff makes here in support of his class action claim:

> Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

See Daisy, 2015 WL 1418607, at *5.

The Court, in ruling on the defendant's motion to dismiss the class action claim in Daisy, observed that "[a]lthough the pleading standard announced in Fed. R. Civ. P. 8 does not require 'detailed factual allegations,' it does demand more than an unadorned, 'the-defendant-unlawfully-harmed-me accusation.'" See Id. (quoting Sinaltrainal, 578 F.3d at 1268; Iqbal, 556 U.S. at 678 (2009)). Furthermore, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. See Id. (quoting Sinaltrainal, 578 F. 3d at 1268); Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005).

As a result, the Court granted Motion to Dismiss Class Action Complaint in Daisy finding that the plaintiff did not plead a sufficient factual basis to support a plausible Rule 23 class action claim at that point in the proceedings. See Id. at *6. Instead, the plaintiff merely alleged a formulaic recitation of the elements of a class action without providing sufficient facts to support its claims. See Id. (quoting Twombly, 550 U.S. at 561-63 for the proposition that a complaint must be more than a formulaic recitation of the elements of a cause of action).

0:19-cv-60409-MGC

Plaintiff's First Amended Complaint is devoid of any information that would support an inference of <u>years of unauthorized</u> texts sent by ADW. Plaintiff's allegations with respect to the class are nearly identical as those in the <u>Daisy</u> action. Those allegations were insufficient there, and they are insufficient here.

The Plaintiff has failed to make sufficient factual allegations of diversity and the amount of damages required by Class Action Fairness Act (CAFA), 28 U.S.C.A. § 1332(d)(2) and (d)(2)(A) to invoke the Court's subject matter jurisdiction. "The policy of the Judicial Code, 28 U.S.C.A. § 1331 et seq., concerning jurisdiction by diversity of citizenship calls for strict construction of the statute and if the plaintiff's allegations of jurisdiction are challenged, the plaintiff must support them by competent proof or suffer his action to be dismissed for lack of jurisdiction." <u>Cont'l Min. & Mill. Co. v. Migliaccio</u>, 16 F.R.D. 217, 219 (D. Utah 1954), *quoting* <u>Thomson v. Gaskill</u>, 315 U.S. 442, 446 (1942). "The problem of jurisdiction is presented in every case and it is universally recognized that there is a continuing duty upon the Court to be ever watchful and to ascertain the existence of the requisite amount or value in controversy upon its own motion or that of anyone interested. […] Lack of jurisdiction cannot be waived by the parties and the issue should not be side-stepped by the Court; it has the authority and duty when any question arises to make inquiry and to determine whether the case is within its general jurisdiction." <u>Cont'l Min. & Mill. Co</u>. at 219.

Given the above, it is, therefore, appropriate to dismiss Plaintiff's class allegations.

0:19-cv-60409-MGC

**6.  ¶¶ 11 to 31 OF PLAINTIFF'S FIRST AMENDED COMPLAINT SHOULD BE STRICKEN AS THEY CONSTITUTE A LEGAL ARGUMENT AND NOT A COMPLAINT WITHIN THE MEANING ON FEDERAL RULE OF CIVIL PROCEDURE 8.**

Under Rule 8(a)(2), a pleading that states a claim for relief must contain a "short and plain statement of claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). 8. ¶¶ 11 to 31 of Plaintiff's First Amended Complaint are not a short and plane statement of claim showing entitlement to relief but a legal argument solely consisting of various case law citations, excerpts from an FCC order and Plaintiff's interpretation of those. ADW in unable to admit or deny these arguments as its interpretation of this legal authority may fundamentally differ from that of Plaintiff's. In order to prepare responsive pleading to ¶¶ 11 to 31 of Plaintiff's First Amended Complaint, ADW will have to respond as if it was responding to a motion or a legal brief, which is not permitted since Rule 8 mandates a statement in "short and plain terms [of] defenses to each claim" and "[admission or denial of ] allegations asserted. . .by an opposing party." Fed. R. Civ. P. 8(b)(1)(A) and (B). See McHenry v. Renne, 84 F.3d 1172, 1177–80 (9th Cir.1996) (upholding a Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").

Given the above, it is, therefore, appropriate to dismiss ¶¶ 11 to 31 of Plaintiff's First Amended Complaint.

## <u>CONCLUSION</u>

For the above reasons, the Court lacks subject matter jurisdiction over this action and the Plaintiff's First Amended Complaint fails to state a claim for violation of the TCPA. The Plaintiff's action, therefore, should be dismissed.

0:19-cv-60409-MGC

WHEREFORE, Defendant ADW respectfully requests that this honorable Court dismiss Plaintiff's First Amended Complaint and grant such other relief as is just and appropriate.

## CERTIFICATE OF SERVICE

I CERTIFY that on March 7, 2019, the foregoing was filed electronically through the Court's ECF filing system which will send a copy to counsel of record for the parties.

THE LAW OFFICES OF BRUCE
PROBER, P.A.
Attorney for Defendant ADVANCED
DENTAL WELLNESS CENTER, P.A.
330 N. Andrews Ave, Suite 450
Ft. Lauderdale, FL 33301
Telephone:     (954) 816-1260
Facsimile:      (954) 333-1505
Email: bprober@proberlaw.com
By:   /S/ Bruce Prober_____
        Bruce Prober, Esq.